AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

One (1) black T Mobile cellphone, IMEI:
015702001278948

)
)
)
)
)
)
)

Case No. 21-8221MB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ District of _____ Arizona _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before ___10-14-21___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ the Phoenix duty U.S. Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  9-30-21 @ 11:56AM -                    *Judge's signature*

City and state:     Phoenix, Arizona            Honorable John Z. Boyle, U.S. Magistrate Judge
                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is the following: one (1) black T-Mobile cellular telephone, IMEI 015702001278948, belonging to Lavina Dawn MIGUEL. (hereafter known as the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.　　Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, including:

　　　a.　all records and information related to the transportation of aliens;

　　　b.　all records and information related co-conspirators (including guides, scouts, coordinators, recruiters, smugglers, transporters, and money launderers) involved in transporting aliens (including names, addresses, telephone numbers, locations, or any other identifying information);

　　　c.　all bank records, checks, credit card bills, account information, or other financial records;

　　　d.　all information regarding the receipt, transfer, possession, transportation, or use of proceeds from the transportation of aliens;

　　　e.　any information recording schedule or travel;

　　　f.　evidence of who used, owned, or controlled the SUBJECT CELLULAR TELEPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

　　　g.　evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

h.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

i.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

j.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

k.  evidence of the times the cellular telephone was used;

l.  passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone;

m.  documentation and manuals that may be necessary to access the cellular telephone or to conduct a forensic examination of the cellular telephone;

n.  records of or information about Internet Protocol addresses used by the cellular telephone;

o.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications;

2

reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

3

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>**One (1) black T Mobile cellphone, IMEI:**<br>**015702001278948** | Case No. 21-8221 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. Section 1324(a)(1)(A)(v)(I) | Conspiracy to Transport Illegal Aliens |
| 8 U.S.C. Section 1324(a)(1)(A)(iii) | Transportation of Illegal Aliens |

The application is based on these facts:

### See attached Affidavit of Agent Peterson

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Lisa E. Jennis

_____
*Applicant's Signature*

Shane R. Peterson, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-30-21 @ 11:56AM _____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is the following: one (1) black T-Mobile cellular telephone, IMEI 015702001278948, belonging to Lavina Dawn MIGUEL. (hereafter known as the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, including:

    a.  all records and information related to the transportation of aliens;

    b.  all records and information related co-conspirators (including guides, scouts, coordinators, recruiters, smugglers, transporters, and money launderers) involved in transporting aliens (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of proceeds from the transportation of aliens;

    e.  any information recording schedule or travel;

    f.  evidence of who used, owned, or controlled the SUBJECT CELLULAR TELEPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    g.  evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

h.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

i.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

j.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

k.  evidence of the times the cellular telephone was used;

l.  passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone;

m. documentation and manuals that may be necessary to access the cellular telephone or to conduct a forensic examination of the cellular telephone;

n.  records of or information about Internet Protocol addresses used by the cellular telephone;

o.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p.  contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications;

2

reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

3

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Shane R. Peterson, being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine a cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.     Your Affiant is currently employed by the U.S. Customs and Border Protection, Office of Border Patrol, and has been working as a Border Patrol Agent since September 2011. I completed the Border Patrol Academy in March of 2012, where I received instruction in constitutional law, immigration law, criminal law, and in federal/civil statutes. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States. As a Border Patrol Agent, I have received training in evidence collection. Your Affiant primarily focuses on investigating human and controlled substances smuggling crimes. Your Affiant is currently assigned to the Phoenix Prosecutions detail at the Casa Grande (CAG) Station.

3.     The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits.

4.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

5.      Based on the facts contained in the Affidavit, there is probable cause to believe that violations of Title 8 U.S.C. § 1324(a)(1)(A)(v)(I), Conspiracy to Transport Illegal Aliens, and Title 8 U.S.C. § 1324(a)(1)(A)(ii), Transportation of Illegal Aliens were committed by Lavina Dawn Miguel and other unknown persons.  There is also probable cause to search SUBJECT CELLULAR TELEPHONE as described in Attachment A, for evidence of these crimes further described in Attachment B.

## LOCATION OF THE SUBJECT CELLULAR TELEPHONE

6.      The SUBJECT CELLULAR TELEPHONE was seized incident to arrest of Lavina Dawn Miguel on September 10, 2021.  The SUBJECT CELLULAR TELEPHONE was seized by United States Border Patrol (USBP) and has remained in the custody of USBP since the date of its seizure:   One black T-MOBILE telephone with IMEI 015702001278948. The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

7.      In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of USBP.

## BASIS FOR PROBABLE CAUSE

8.      On September 10, 2021, a Deputy from the Pinal County Sheriff's Office conducted a traffic stop on a white 2007 Chrysler Town & Country minivan on Interstate 10 near mile marker 203 near Eloy, Arizona.  Deputies Iniguez and Sanders observed that the minivan's windshield was obstructed by items hanging from the rearview mirror which is a violation of Arizona State law. During the traffic stop, Deputies Iniguez and Sanders detained the driver of the Chrysler Town & Country minivan, later identified as Lavina

2

Dawn MIGUEL, on suspicion of an immigration related crime and requested assistance from Border Patrol. On September 10, 2021, Border Patrol Agent (BPA) Scott Betcher arrived on scene and assisted Deputies Iniguez and Sanders.

9.      MIGUEL has two previous convictions for transportation of illegal aliens in the United States District Court, District of Arizona: CR16-01540-PHX-JAT and CR-19-00272-2-TUC-RCC. On September 10, 2021, she was still on supervised release in CR-19-00272-2-TUC-RCC.

10.      Agent Betcher noticed there were a total of six occupants in the minivan, including the driver. He then conducted an immigration inspection on all the occupants and determined that MIGUEL and the front seat passenger, Chandler Miguel were United States citizens. The four backseat passengers, one of whom was a 13 year old, admitted to being citizens or nationals of Guatemala. One of those passengers was seated in the rear cargo area which doesn't have a seatbelt. There was also grass and mesquite leaves stuck to the shoes and pants of the four backseat passengers which is indicative of walking through the desert. The front seat passengers did not have grass and leaves on their clothing. All four backseat passengers admitted to being present in the United States illegally and did not possess any documents indicating they were authorized to enter or remain in the United States. All six occupants of the minivan were arrested and transported to the Casa Grande Border Patrol Station for further processing.

11.      When Agent Betcher began his investigation on Interstate 10 he asked MIGUEL who her passengers were and she replied that the front seat passenger, Chandler Miguel, was her brother. MIGUEL further stated that she did not know how the other four passengers got in her minivan or where they got into her minivan. MIGUEL told Agent Betcher that she did not wish to answer any more question without a lawyer. After arriving at the Border Patrol Station, MIGUEL was read her Miranda Rights and affirmed that she did not wish to answer questions without an attorney present.

3

12.     Based on my training and experience, and that of other agents, human and narcotic smugglers commonly utilize cellphones to communicate between drivers and smuggling coordinators. This is current common trend to guide human and narcotic smugglers to a specific location north of the International Boundary Fence separating Mexico and the United States, for illegal alien or narcotics pickups in remote desert areas or roads with or without identifiable mile markers. Based on my training and experience, and that of other agents, after smugglers pickup aliens at these locations, they transport them to another location further within the United States, to assist their continued illegal presence in the United States.

13.     MIGUEL had on her person at the time of arrest the SUBJECT CELLULAR TELEPHONE and confirmed during the property inventory that the SUBJECT CELLULAR TELEPHONE belonged to her. There were no other cellular telephones located in the vehicle.

## ITEMS TO BE SEIZED

14.     Based upon my knowledge, experience, and training in investigations of alien smuggling organizations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common amongst individuals involved in alien smuggling organizations. Individuals involved in alien smuggling activity tend to:

   a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

   b. Collect data pertaining to other co-conspirators involved in alien smuggling and/or transporting activity;

   c. Possess and maintain records reflecting bank transactions and/or money transfers;

4

d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the SUBJECT CELLULAR TELEPHONE);

e. Correspond with and/or meet with other alien smuggling and/or transporting associates to share alien smuggling and/or transporting information and/or materials;

f. Retain correspondence from other alien smuggling and/or transporting co-conspirators relating to alien smuggling and/or transporting activity; and

g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smuggler and/or transporter have been in contact and/or conducted alien smuggling and/or transporting activity.

## DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

15.    As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

16.    *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

a.    Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain; data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was

achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

      b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

      c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    17.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that

6

establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet.  Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation.  Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence

7

and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

        c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

        d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence

of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

19. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20. I submit that there is probable cause to believe that violations of Title 8 U.S.C. § 1324(a)(1)(A)(v)(I), Conspiracy to Transport Illegal Aliens and Title 8 U.S.C. §1324 (a)(1)(A)(ii), Transportation of Illegal Aliens were committed by Lavina Dawn MIGUEL and other unknown persons. There is also probable cause to search SUBJECT CELLULAR TELEPHONE as described in Attachment A, for evidence of these crimes further described in Attachment B.

Border Patrol Agent Shane R. Peterson
United States Border Patrol

Subscribed and telephonically sworn to before me this 30 day of September, 2021.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge

9